CYNTHIA VAN RENSELAAR & others[1] *vs.* CITY OF SPRINGFIELD & others.[2]

No. 01-P-982.

Hampden. December 5, 2002. - May 14, 2003.

Present: GELINAS, MASON, & MILLS, JJ.

*Practice, Civil,* Standing. *Zoning,* Appeal, Spot zoning. *Jurisdiction,* Zoning.

In an action challenging an amendment to a city's zoning ordinance that rezoned a parcel of land from residential to business use, in which owners of nearby properties (plaintiffs) claimed that the amendment constituted "spot zoning," the judge correctly concluded that the plaintiffs had standing, although he was mistaken in identifying the plaintiffs' action as a zoning appeal pursuant to G. L. c. 40A, § 17, and in applying a "person aggrieved" standard in his analysis, where it was sufficient for the plaintiffs to have established that they would suffer an adverse impact from the legislative zoning action, without establishing, in addition, that their injury was special and different from the concerns of the rest of the community. [106-108]

In an action challenging an amendment to a city's zoning ordinance that rezoned a parcel of land from residential to business use in which owners of nearby properties (plaintiffs) claimed that the amendment constituted "spot zoning," the judge properly concluded that the amendment was valid, where the plaintiffs failed to satisfy the burden of proof necessary to overcome the presumption of validity of the contested zoning amendment, and where the adjacent land uses and nonresidentially zoned parcels supported the judge's conclusion that the rezoning was valid because it resulted in a coherent and consistent zoning district. [108-109]

The record in an action challenging an amendment to a city's zoning ordinance did not support the plaintiffs' assertion that the judge excluded from evidence a certain "plan and any and all testimony related thereto," where the judge made it clear that only the document itself was being excluded; further, there was, in any event, no prejudice to the plaintiffs, as they were allowed to offer in evidence, from other sources, the information contained in the plan. [109-110]

CIVIL ACTION commenced in the Superior Court Department on August 4, 1998.

[1]Susan McCarthy and Dennis Ewing.

[2]Commissioner of the department of code enforcement of Springfield; building inspector of Springfield; and Belmont Laundry, Inc.

The case was heard by *Peter A. Velis*, J.

*Mark E. Draper* for the plaintiffs.

*Kathleen T. Breck*, Associate City Solicitor, for city of Springfield & others.

*Edward J. Partyka* for Belmont Laundry, Inc.

MILLS, J. The plaintiffs challenge an amendment to the Springfield zoning ordinance, rezoning a parcel of land (the locus) from residential to business use. The plaintiffs claim that the amendment constitutes "spot zoning," i.e., an unlawful singling out of land in a zoning district without relation to the furtherance of general objectives of zoning. *Shapiro* v. *Cambridge*, 340 Mass. 652, 659 (1960); *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. 305, 312-313 (1990). Following a trial, a Superior Court judge concluded that the amendment is valid, and the plaintiffs appealed. We affirm.

The locus is owned by the defendant, Belmont Laundry, Inc. (Belmont), and includes four contiguous lots containing a total of 17,404 square feet. Adjacent to the locus, to the north, is an apartment complex on land zoned for business use. There are a number of residential properties to the south of the locus, on land zoned for residential use. Adjacent to the rear of the locus is a retail grocery store on a lot that is zoned partially for commercial and partially for business use. Belmont's existing commercial laundry building is situated on a commercially zoned parcel that is adjacent to the locus on the south. The plaintiffs each own and reside in homes in the immediate vicinity of the locus.[3]

The rezoning was specifically sought by Belmont so as to immediately permit a specific use: construction of a commercial building that would house six delivery trucks and two 20,000 gallon storage tanks as part of a treatment system of commercial wastewater. The judge made findings concerning industrial pretreatment of wastewater generally, as well as findings specific to

---

[3]The plaintiffs have not alleged that they are direct abutters to the locus, describing themselves as "three owners of nearby properties on Crystal Avenue who will be directly affected by the zoning enactment."

Belmont's existing use, intended new use, and the city's immediate concern with wastewater pretreatment requirements.[4]

Other characteristics of the locus, the existing neighborhood land uses, and Belmont's intended uses, are described in the judge's findings, and will be noted as appropriate.

1. *Standing.* As a threshold jurisdictional matter, we consider the defendants' complaints that the judge erred in finding that the plaintiffs have standing to maintain their action. The Superior Court has jurisdiction pursuant to G. L. c. 231A to ascertain the validity of a zoning ordinance as applied to the land of others than the plaintiffs. See *Noonan* v. *Moulton,* 348 Mass. 633, 637 (1965). However, the statute does not provide an independent statutory basis for standing.[5] "A party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Massachusetts Assn. of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.,* 373 Mass. 290, 293 (1977).

In this case the plaintiffs essentially alleged that their houses were within a residential area and were negatively affected by the city's illegal rezoning of adjacent land which would permit the construction of an industrial wastewater treatment facility too close to their homes.

The city, by affirmative defense, challenged the plaintiffs' standing and asserted that they do not have a private cause of action for direct enforcement of zoning laws. Belmont, in its answer, asserted the plaintiffs' lack of standing without citing to any specific authority. The defendants did not explicitly allege that the plaintiffs' injuries did not fall within the area of the concern of the Zoning Act. Rather, the defendants argued that the plaintiffs' standing failed because the injuries alleged were not different in kind from those suffered by the community as a

---

[4]A substantial amount of the testimony, and a majority of the findings concerned the identity of Belmont, its historical place in the community, the geographic base that it draws upon for its customers and employees, its current uses of its properties, vandalism of its trucks and its status as a "good neighbor" in the community. This evidence, marginally relevant to the validity of the rezoning, was relevant to the issue of standing, as it justified the plaintiffs' concerns that the rezoning was impermissibly owner-specific.

[5]See *Pratt* v. *Boston,* 396 Mass. 37, 42-43 (1985).

whole. See *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 493 (1989). The defendants characterized the plaintiffs' case as a zoning appeal under G. L. c. 40A, § 17, which implicates its "person aggrieved" requirement for standing. Relying upon zoning cases construing that specific requirement, especially *Barvenik* v. *Board of Aldermen of Newton*, 33 Mass. App. Ct. 129 (1992), the defendants asserted that the plaintiffs' injuries were not "special and different from the concerns of the rest of the community." *Id.* at 132.

Section 17 of G. L. c. 40A, taken together with § 11, establishes particular requirements for a discrete type of "zoning appeal" — that taken by a "person aggrieved by a decision of the board of appeals or any special permit granting authority. . . ." An appeal under § 17 does not lie from the legislative action of the city council or the town meeting, which are not "decisions" of a local appointed board. We find no authority suggesting, let alone requiring, that the rigorous standard of "person aggrieved," used in cases arising under G. L. c. 40A, § 17, be applied to plaintiffs who challenge the validity of a zoning regulation or an amendment to it. We decide that, for purposes of their standing to challenge local legislation that adopts or amends a zoning ordinance or by-law, it is sufficient for these plaintiffs to have established that they will suffer an adverse impact from the legislative zoning action, without establishing, in addition, that their injury is special and different from the concerns of the rest of the community. Contrast, as to the treatment of standing under G. L. c. 40A, § 17, *Green* v. *Board of Appeals of Provincetown*, 404 Mass. 571 (1989); *Nickerson* v. *Zoning Bd. of Appeals of Raynham*, 53 Mass. App. Ct. 680 (2002).[6] We hold that the judge correctly concluded that the plaintiffs have standing, although he was mistaken in identifying the plaintiffs' action as a zoning appeal pursuant to G. L.

---

[6]The purposes of zoning include stabilization of the use of property and protection of areas from deleterious uses, see *Enos* v. *Brockton*, 354 Mass. 278, 279 (1968), and protection of property owners in more restricted (e.g., residential) districts from activities and uses permitted in less restrictive (e.g., commercial) areas. See *Burnham* v. *Board of Appeals of Gloucester*, 333 Mass. 114, 116 (1955).

c. 40A, § 17, and in applying a "person aggrieved" standard in his analysis.

2. *Spot zoning*. In a claim of spot zoning, as in any challenge to the validity of an amendment to a local zoning provision, " '[e]very presumption is to be made in favor of the amendment and its validity will be upheld unless it is shown beyond reasonable doubt that it conflicts with the enabling act.' " *Vagts* v. *Superintendent & Inspector of Bldgs. of Cambridge*, 355 Mass. 711, 713 (1969), quoting from *Lanner* v. *Board of Appeal of Tewksbury*, 348 Mass. 220, 228 (1964). See also *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. at 309. Notwithstanding the heavy burden borne by a party challenging a zoning amendment, characterizing "a challenger's burden as one of proof beyond reasonable doubt may not be instructive. A better characterization is that the challenger must prove by a preponderance of the evidence that the zoning regulation is arbitrary and unreasonable, or substantially unrelated to the public health, safety, morals, or general welfare." *Johnson* v. *Edgartown*, 425 Mass. 117, 121 (1997). Put another way, the party challenging the amendment has the burden of proving "facts which compel a conclusion that the question whether the amendment falls within the enabling statute is not even fairly debatable." *Crall* v. *Leominster*, 362 Mass. 95, 103 (1972). "If the reasonableness of a zoning regulation is fairly debatable, the judgment of the local legislative body . . . should be sustained and the reviewing court should not substitute its own judgment." *National Amusements, Inc.* v. *Boston*, *supra* at 309.

Spot zoning occurs when there is a "singling out of one lot for different treatment from that accorded to similar surrounding land indistinguishable from it in character, all for the economic benefit of the owner of that lot." *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 361-362 (1973) (citations omitted). Bobrowski, Massachusetts Land Use & Planning Law § 3.4.3, at 114 (1993). Selective zoning of that kind violates the uniformity requirements of G. L. c. 40A, § 4, and "constitutes a denial of equal protection under the law guaranteed by the State and Federal Constitutions." See *Rando* v. *North Attleborough*, 44 Mass. App. Ct. 603, 606 (1998) (citation omitted). The test, however, is not whether the zoning

change is beneficial to a landowner. "It is no objection to a legislative solution of a public problem that it will incidentally lead to private profit or advantage." *Lanner* v. *Board of Appeal of Tewksbury*, *supra* at 229-230.

The judge's findings establish that the rezoning will permit significant private benefit. Currently, the wastewater from Belmont's operation is discharged into the city's wastewater collection system. Belmont is unable reasonably to comply with wastewater pretreatment requirements and has insufficient space on its commercially zoned land to accommodate the equipment that would allow it to comply. Its current system, within the building on commercially zoned land, is inadequate. The proposed use is not allowed under the residential zoning. The rezoning of the adjacent land, however, provides space that will accommodate a better wastewater treatment system. We need not decide whether these reasons, standing alone, would support the legitimacy of the rezoning.

There are other reasons for upholding the amendment. Adjacent to the locus is a substantial apartment building on land zoned for business use. Next to the apartment building, and also adjacent to the locus, is Belmont's commercial building, the land of which is also zoned for business use. Next to Belmont's laundry, and adjacent to the locus, is a food store located on the land that is zoned partially for commercial and partially for business use. The plaintiffs' properties may be described as being in an area more predominately residential. The locus, however, is not. The surrounding uses are clearly mixed, and, if anything, the locus is adjacent to predominately nonresidentially zoned land. If this were a case solely about providing Belmont additional land for a wastewater plant, the rezoning might not have survived the plaintiffs' challenge. However, the adjacent land uses and nonresidentially zoned parcels support the judge's conclusion that the rezoning is valid because it results in a coherent and consistent zoning district.

3. *Neighborhood plan*. The plaintiffs argue that the exclusion from evidence of a document identified as the "Forest Park Neighborhood, September, 1996" (plan) was erroneous and, therefore, the judgment of the Superior Court must be vacated. While the plaintiffs assert that the judge "excluded the plan and

any and all testimony related thereto," the record simply does not support this assertion. The judge made it clear that it was only the document itself that was being excluded, stating:

> "It is the document I excluded with respect to the Neighborhood Plan. That is what I was asked to exclude, only the document in and of itself . . . . In any event, if [the witness] has personal knowledge — and informal knowledge as to whether a recommendation was made . . . . she can respond."

Although the judge did not address the issue of hearsay, the plan was "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c); Proposed Mass.R.Evid. 801(c). There was, in any event, no prejudice to the plaintiffs, as they were allowed to offer in evidence, from other sources, the information contained in the plan. See *Foreign Car Center, Inc.* v. *Salem Suede, Inc.*, 40 Mass. App. Ct. 15, 17 (1996).

The plaintiffs have failed to satisfy the burden of proof necessary to overcome the presumption of validity of the contested zoning amendment. The judgment is affirmed.

*So ordered.*